**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DOMINION ENERGY INC., et al., | : | |
|     Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-156 (JCH) |
|     v. | : | |
| | : | |
| ZURICH AMERICAN INSURANCE CO., | : | OCTOBER 18, 2013 |
|     Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION TO TRANSFER (Doc. No. 24) AND PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 31)**

## I.   INTRODUCTION

Plaintiffs Dominion Energy Inc., Dominion Generation Corporation, Dominion Technical Solutions, Inc., and Dominion Resources, Inc. (collectively, "Dominion") bring this coverage action against defendant Zurich American Insurance Company ("Zurich"). Dominion seeks, inter alia, a declaration that Zurich has a duty to defend Dominion as an additional insured under a policy issued to Alstom, Inc. ("Alstom") in a state tort action in which both Alstom and Dominion are defendants. Zurich moves to transfer the present case to the District of Massachusetts. Dominion moves for summary judgment on the duty to defend.

For the reasons below, the court **DENIES** Zurich's Motion to Transfer (Doc. No. 24) and **GRANTS** Dominion's Motion for Partial Summary Judgment (Doc. No. 31).

## II.   FACTUAL BACKGROUND

### A.   Alliance Agreement

In February 2005 Dominion and Alstom entered into a contract (the "Alliance Agreement") that establishes their rights and obligations for work to be performed by Alstom at Dominion power generation facilities. See Pl.'s Local Rule ("L.R.") 56(a)(1) Statement (Doc. No. 33) at ¶ 1. Alstom agreed to maintain insurance policies meeting

1

specified coverage limits and to amend the policies so that Dominion is covered as an additional insured to the extent necessary to fund Alstom's obligations.  Id. at ¶¶ 2-5. Alstom also agreed, inter alia, to indemnify and, at Dominion's sole option, to defend Dominion against all claims, loss, and damages—including attorney's fees through the appellate level—to the extent that these arose from or were in connection with materials or equipment supplied by Alstom or services performed by Alstom.  Id. at ¶ 6.  The claims against which Alstom agreed to defend Dominion include third-party claims for personal injury or death.  Id.

      B.    <u>Zurich Policy</u>

Alstom is a named insured under a commercial general liability insurance policy (the "Zurich Policy") which was in effect from April 2007 to April 2008.  Id. at ¶¶ 7-8. The Zurich Policy requires Zurich to pay damages which an insured becomes legally obligated to pay because of bodily injury and states that Zurich will have the "right and duty to defend the insured against any 'suit' seeking those damages," where "suit" encompasses any civil proceeding alleging damages because of bodily injury, including mental anguish.  Id. at ¶ 9.

As amended by the Automatic Additional Insured endorsement, the Zurich Policy states that an entity whom Alstom is required to name as an insured in a "written insured contract" (known as an "additional insured") is also "an insured but only with respect to liability arising out of [Alstom's] premises, '[Alstom's] work' for the additional insured, or acts or omissions of the additional insured in connection with the general supervision of '[Alstom's] work.'"  Id. at ¶ 12.  Unless otherwise provided for by the written insured contract, the endorsement excludes from coverage bodily injury arising

out of any act or omission of the additional insured, other than general supervision of work for the additional insured performed by Alstom.  Id. at ¶ 19.

      C.    <u>Purchase Order</u>

A purchase order dated January 16, 2007 (the "Purchase Order") required Alstom to provide a service engineer to inspect Boiler 3 at the Salem Harbor Station, which inspection would include visual inspection of selected boiler pressure parts, enclosures, and ductwork.  Id. at ¶¶ 23-24.  Through its employee Dennis Nygaard, Alstom inspected parts of Boiler 3, although Zurich denies Dominion requested that Alstom inspect the "dead air space" of Boiler 3.  Id. at ¶ 25; cf. Def.'s L.R. 56(a)(2) Statement (Doc. No. 38) at ¶ 25.

      D.    <u>Boiler 3 Explosion</u>

In November 2007, due to a catastrophic failure at Boiler 3, three men were fatally injured.  See Pl.'s L.R. 56(a)(1) Statement at ¶ 26.  Two other men were allegedly injured in attempting to aid the decedents.  Id.  In May 2009, the decedents' estates and others brought suit against Dominion, Alstom, Nygaard, and others in Massachusetts state court, alleging, inter alia, that Nygaard was negligent in his inspection of Boiler 3 and that Alstom is liable under respondeat superior as well as liable for failing to supervise Nygaard.  Id. at ¶¶ 27-32.

## III.    MOTION TO TRANSFER

      A.    <u>Standard of Review</u>

Section 1404(a) of title 28 of the United States Code provides that a district court may transfer any civil action to any other district or division where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  Section 1404(a) is intended "to prevent the waste of time, energy and

money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

In determining whether transfer is appropriate, district courts engage in a two-part inquiry, asking:  (1) whether the action might have been brought in the proposed transferee forum; and, if so, (2) whether the transfer promotes convenience and justice. See Wilson v. DirectBuy, Inc., 821 F. Supp. 2d 510, 515 (D. Conn. 2011); Jones v. Walgreen Co., 463 F. Supp. 2d 267, 271 (D. Conn. 2006).  Factors to be considered under the second step of the inquiry include:  (1) the plaintiff's choice of forum; (2) the convenience of witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses;  (7) the relative means of the parties; (8) the district court's familiarity with governing law; and (9) trial efficiency and the interest of justice.  See New York Marine & Gen. Ins. Co. v. Lafarge North America, Inc., 599 F.3d 102, 112 (2d Cir. 2010).

District courts have broad discretion under section 1404(a) to adjudicate motions for transfer according to "individualized, case-by-case consideration[s] of convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); see D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).  However, the movant bears the burden of presenting clear and convincing evidence that transfer is warranted.  See New York Marine & Gen. Ins., 599 F.3d at 113-14.

B.    Discussion

Zurich contends, and Dominion does not deny, that the present case might have been brought in the District of Massachusetts, in greater geographic proximity to the

4

pending state action.  See Pl.'s Mem. Supp. Mot. to Transfer ("Pl.'s Transfer Mem.") (Doc. No. 25) at 4-5.  The only question before the court is whether transfer is warranted by considerations of convenience and justice.  Based on the court's review of the factors enumerated by the Second Circuit, and the burden on Zurich, the court concludes that transfer is not warranted.

Dominion's choice to bring suit in this forum deserves substantial weight and should only be disturbed if the balance of convenience and justice "weigh[s] heavily" in favor of Zurich's proposed forum.  Toy Biz, Inc. v. Centuri Corp., 990 F. Supp. 328, 330 (S.D.N.Y. 1998) (citing Golconda Min. Corp. v. Herlands, 365 F.2d 856, 857 (2d Cir. 1966)).  Zurich has failed to demonstrate that the balance so favors transfer in this case. Dominion did not choose this District without reason.  The present litigation concerns Zurich's contractual duty to defend Dominion in the pending state case in Massachusetts.  However, the Zurich Policy itself was issued in Connecticut, where Alstom maintains its principal place of business.  See Pl.'s Mem. in Opp'n to Mot. Transfer ("Pl.'s Transfer Opp'n") (Doc. No. 27) at 4.

The primary basis for Zurich's Motion to Transfer is the alleged need to conduct discovery involving many witnesses located in Massachusetts.  See Def.'s Transfer Mem. at 6-8.  In the standard duty to defend case, the court need only examine the text of the insurance policy and underlying complaint.  Zurich claims that the present litigation is different, in that Zurich's duty to defend Dominion is allegedly coextensive with Alstom's duty to indemnify Dominion and, therefore, is proportional to Alstom's fault.  See Def.'s Transfer Reply (Doc. No. 29) at 1-2.  For reasons detailed in Section IV.C.2, infra, the court is not persuaded by that argument.  Were it necessary for the

court to adjudicate relative fault prior to determining the existence of a duty to defend, the duty to defend would effectively be nullified.  Even assuming Zurich's interpretation of the contract is correct, the logical course for this court would not necessarily be to transfer the case to the District of Massachusetts but, rather, to stay this action pending the outcome of the state case.  There is no question that the locus of operative facts for the state action is Massachusetts.  However, Zurich has not demonstrated, by clear and convincing evidence, that it would be inefficient or unfair for this court to determine, as a matter of law, the meaning and application of an insurance policy issued in Connecticut to a corporation headquartered here.

Therefore, the court denies Zurich's Motion to Transfer and proceeds to consider the merits of Dominion's Motion for Partial Summary Judgment on the duty to defend.

## IV.    MOTION FOR PARTIAL SUMMARY JUDGMENT

A.    <u>Standard of Review</u>

A motion for summary judgment is properly granted only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." <u>O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA</u>, 642 F.3d 110, 116 (2d Cir. 2011). Thus, the role of the district court in deciding a summary judgment motion "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." <u>Id.</u>  In making this determination, the court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  <u>See</u> <u>Garcia v. Hartford Police Dep't</u>, 706 F.3d 120, 127 (2d Cir. 2013).

The moving party bears the burden of establishing the absence of genuine issues of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).  Once that initial burden is met, to defeat the motion, the party opposing

6

summary judgment must set forth "specific facts" that demonstrate the existence of "a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  For summary judgment purposes, a genuine issue exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor. See Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 693 (2d Cir. 2012); see also Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that the non-moving party must point to more than a mere "scintilla" of evidence in its favor).  "However, reliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion."  Davis v. New York, 316 F.3d 93, 100 (2d Cir. 2002).

      B.    <u>Material Facts in Dispute</u>

      The facts in this case derive principally from five documentary sources:  (1) the Zurich Policy; (2) the Alliance Agreement; (3) the Purchase Order; (4) the original complaint in the state case (the "Original Complaint"); and (5) the first amended complaint in the state case (the "First Amended Complaint").  The parties have stipulated to the accuracy, completeness, and authenticity of these documents, which were submitted to the court as a joint appendix.  See J.A. (Doc. No. 34) at ii-iii.

      Zurich alleges that thirty-one material facts remain in dispute.  See Def.'s L.R. 56(a)(2) Statement at 5-9.  However, all of the alleged factual disputes are matters of law that may be resolved by judicial interpretation of the Zurich Policy, the Alliance Agreement, the Purchase Order, and the Original Complaint and First Amended Complaint.  These disputes, therefore, do not preclude summary judgment from being granted in this case.

C.    <u>Discussion</u>

Dominion moves for summary judgment on a single legal issue—whether Zurich has a duty to defend Dominion in the state case.  The court determines, as a matter of law, that Zurich has such a duty, because Dominion is an additional insured under the Zurich Policy, and because the Original Complaint and First Amended Complaint in the underlying state action allege facts that potentially fall within the scope of coverage.

    1.    Applicable State Law[1]

Under both Connecticut and Massachusetts law, the same general rules of contract construction govern interpretation of an insurance policy.  <u>See</u> <u>Lexington Ins. Co. v. Lexington Healthcare Grp., Inc.</u>, 309 Conn. 1, 9 (2013); <u>Metro. Prop. & Cas. Ins. Co. v. Morrison</u>, 460 Mass. 352, 362 (2011).  In interpreting an insurance policy, the court must look at the contract as a whole, consider all relevant portions together, and, if possible, give effect to every provision to reach a reasonable overall result.  <u>See</u> <u>Lexington Ins.</u>, 309 Conn. at 10.  "The determinative question is the intent of the parties, that is, what coverage the insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy."  <u>Id.</u> at 9-10.  Policy terms that are unambiguous are given their ordinary meaning.  <u>Id.</u> at 10; <u>Morrison</u>, 460 Mass. at 362.

Both Connecticut and Massachusetts courts construe ambiguous terms—that is, terms "reasonably susceptible to more than one reading"—in favor of the insured, given that the insurance company invariably drafted the policy.  <u>Lexington Ins.</u>, 309 Conn. at

---

[1] Dominion and Zurich are in agreement that the two jurisdictions at issue here—Connecticut, where the Zurich Policy was issued, and Massachusetts, where the insured risk came to pass—do not differ with respect to the duty to defend.  <u>See</u> Pl.'s Mem. in Support of Mot. for Summ. J. ("Pl.'s Summ. J. Mem.") (Doc. No. 32) at 12; Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Summ. J. Opp'n") (Doc. No. 37) at 8.  Having found no conflict of law, the court need not address the choice of law.  <u>See</u> <u>Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.</u>, 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter . . . unless the laws of the competing jurisdictions are actually in conflict.").

10; see Morrison, 460 Mass. at 362-63. This rule of construction applies particularly to exclusionary provisions. See Vermont Mut. Ins. Co. v. Walukiewicz, 290 Conn. 582, 592 (2009); Morrison, 460 Mass. at 363. However, the fact that the parties advocate different interpretations does not mean that the language of the insurance policy is necessarily ambiguous. See Misiti, LLC v. Travelers Prop. Cas. Co. of Am., 308 Conn. 146, 155 (2013).

Like the interpretation of an insurance policy in general, the determination of whether an insurer has a duty to defend is entirely a legal determination, which is to be made by comparing the allegations of the underlying complaint with the terms of the insurance policy. See Cmty. Action for Greater Middlesex Cnty., Inc. v. Am. Alliance Ins. Co., 254 Conn. 387, 395 (2000); Saint Consulting Grp., Inc. v. Endurance Am. Specialty Ins. Co., Inc., 699 F.3d 544, 550 (1st Cir. 2012).

Under both Connecticut and Massachusetts law, an insurer's duty to defend a lawsuit is broader than the duty to indemnify and "is triggered if at least one allegation of the complaint falls even possibly within the coverage." Capstone Bldg. Corp. v. Am. Motorists Ins. Co., 308 Conn. 760, 805 (2013) (citation and internal quotation marks omitted); Morrison, 460 Mass. at 357 ("It is settled that an insurer's duty to defend is independent from, and broader than, its duty to indemnify." (citation and internal quotation marks omitted)). The insurer's duty to defend extends thus to complaints alleging facts that potentially fall within the scope of coverage, regardless of whether facts outside the four corners of the pleadings indicate that the claims may be meritless or outside the scope of coverage. See Capstone Bldg., 308 Conn. 805-06; Morrison,

460 Mass. at 357-58.[2]  "Because the duty to defend is significantly broader than the

duty to indemnify, where there is no duty to defend, there is no duty to indemnify."

DaCruz v. State Farm Fire & Cas. Co., 268 Conn. 675, 688 (2004) (citation and internal

quotation marks omitted).

        2.        Dominion Is an Additional Insured Under the Zurich Policy.

Dominion's status as an additional insured under the Zurich Policy depends on

the proper interpretation of the following language in the Automatic Additional Insured

endorsement:

> ANY ENTITY YOU [ALSTOM] ARE REQUIRED IN A WRITTEN "INSURED CONTRACT" (HEREINAFTER CALLED ADDITIONAL INSURED) TO NAME AS AN INSURED IS AN INSURED BUT ONLY WITH RESPECT TO LIABILITY ARISING OUT OF YOUR PREMISES, "YOUR WORK" FOR THE ADDITIONAL INSURED, OR ACTS OR OMISSIONS OF THE ADDITIONAL INSURED IN CONNECTION WITH THE GENERAL SUPERVISION OF "YOUR WORK" TO THE EXTENT SET FORTH BELOW.
>
> (1) THE LIMITS OF INSURANCE PROVIDED ON BEHALF OF THE ADDITIONAL INSURED ARE NOT GREATER THAN THOSE REQUIRED BY SUCH CONTRACT.
>
> (2) THE COVERAGE PROVIDED TO THE ADDITIONAL INSURED(S) IS NOT GREATER THAN THAT CUSTOMARILY PROVIDED BY THE POLICY FORMS SPECIFIED IN AND REQUIRED BY THE CONTRACT.
>
> (3) ALL INSURING AGREEMENTS, EXCLUSIONS AND CONDITIONS OF THIS POLICY APPLY.
>
> (4) IN NO EVENT SHALL THE COVERAGE OR LIMITS OF INSURANCE IN THIS COVERAGE FORM BE INCREASED BY SUCH CONTRACT.

J.A. at 82.

---

[2] The Massachusetts Supreme Court has carved out narrow exceptions that permit courts to consider extrinsic facts.  See Morrison, 460 Mass. at 358.  These exceptions, however, do not pertain to the present case.

There is no dispute that the Alliance Agreement constitutes an "insured contract" for purposes of the Automatic Additional Insured endorsement.  See Pl.'s Mem. in Support of Mot. for Summ. J. ("Pl.'s Summ. J. Mem.") (Doc. No. 32) at 12; Def.'s Transfer Reply at 3.  Zurich argues, however, that the underlying state action does not trigger Dominion's status as an additional insured.  See Def.'s Opp'n to Pl.'s Mot. for Summ. J. ("Def.'s Summ. J. Opp'n") (Doc. No. 37) at 8-11.  That argument is without merit.

It is true that, under subparagraph (2), coverage of the additional insured is no greater than the coverage required by the insured contract.  It is also true that the Alliance Agreement required Alstom to name Dominion as an additional insured under the Zurich Policy, "but only to the extent necessary to fund ALSTOM's obligations."  J.A. at 148-49.  Alstom's obligations, however, include the duty:

> to indemnify, save harmless and, at Dominion's sole option, defend Dominion . . . from and against all claims, demands, direct damages, costs, direct losses, liabilities, expenses, attorneys' fees including attorneys' fees through the appellate level, to the extent arising out of, resulting from, or caused by or to the extent in connection with any of the Materials or Equipment supplied or Services performed by ALSTOM, its subcontractors and suppliers of any tier, for (i) third party claims for personal injury or death to persons and (ii) direct damage to Dominion's or ALSTOM's property or facilities or the property of any other person, including Dominion's or ALSTOM's employees. . . .

> Alstom shall not be required to indemnify Dominion to the extent such claims, losses, liabilities or expenses are caused by Dominion . . . . In the event that both parties caused the claim, loss, liability or expense, each party shall be responsible to the extent that they caused such claim, loss, liability, or expense.

J.A. at 145.  Zurich reads the latter paragraph, which limits Alstom' s indemnity under the Alliance Agreement, as limiting, in turn, Dominion's status as an additional insured under the Zurich Policy.  Zurich concludes, thus, that Dominion is not an additional

insured under the Zurich Policy unless Alstom is already determined to have been solely at fault.

Zurich's interpretation is contrary both to the language of the two agreements and to state law on the duty to defend.  Not only does Zurich conflate Dominion's status as an additional insured with the scope of Dominion's coverage, but Zurich's interpretation would also negate the duty to defend explicitly contained in the Zurich Policy and the Alliance Agreement.  Under the Zurich Policy, Zurich has a separate duty to defend the insured in any suit seeking damages for bodily injury.  See J.A. at 31. Likewise, under the Alliance Agreement, Alstom has a duty to defend Dominion against claims for personal injury or death, as well as an obligation to maintain commercial general liability insurance, such as the Zurich Policy, that covers indemnity as well as personal injury and explosion liability.  See id. at 145, 147-48.  On Zurich's reading, these provisions regarding the duty to defend are given no meaning, because Dominion would be eligible for defense only retrospectively, and only to the extent that Alstom is ultimately found to be at fault in the state action.

Zurich's reading likewise goes against several well-settled precepts of state law: (1) the duty to defend is broader than the duty to indemnify; and (2) the duty to defend applies whenever a complaint alleges facts potentially falling within the scope of the insured's coverage.  See Capstone Bldg., 308 Conn. 805-06; DaCruz, 268 Conn. at 688; Morrison, 460 Mass. at 357-58.  Zurich construes its duty to defend to cover only Alstom's actual liability.  In effect, Zurich would have no duty to defend Dominion, but only a duty to indemnify Dominion following the adjudication of any fault on Alstom's part in the state action.

To give effect to the two agreements, both of which include a distinct duty to defend, the court construes the Automatic Additional Insured endorsement to add Dominion as an insured under the Zurich Policy, as required by the Alliance Agreement. While the provisions to which Zurich points may limit Dominion's coverage, these provisions in no way nullify Zurich's duty to defend where the underlying action potentially implicates that coverage.

3.   Allegations in the State Complaint Potentially Fall Within the Scope of Coverage.

Having determined that Dominion is an insured under the Zurich Policy, the court must address whether the state action potentially implicates Dominion's coverage.   The court determines that it does.

Zurich is correct that, under the Alliance Agreement, Alstom is not required to indemnify Dominion to the extent of Dominion's relative fault.   See J.A. at 145.   Hence, because the Automatic Additional Insured endorsement limits Dominion's coverage under the Zurich Policy to the coverage required by the insured contract, Zurich is only required to indemnify Dominion to the extent of Alstom's fault.   See id. at 82.

The duty to defend, however, arises wherever the underlying complaint alleges facts which potentially fall within the scope of the insured's coverage.   Both the Original Complaint and First Amended Complaint in the state action allege such facts.   For example, the First Amended Complaint alleges, inter alia, that the explosion at Boiler 3 (known as the "Subject Incident") was the result of carelessness, negligence, and/or gross negligence by Dominion, its "servants, agents, employees and/or others for whom [Dominion] may be legally responsible."   Id. at 262.   These claims against Dominion,

13

therefore, include claims against Alstom as one of the "others for whom [Dominion] may be legally responsible." Id. (emphasis added).

Part of the state plaintiffs' theory of liability is that Alstom "failed to train, control, direct and supervise Nygaard, thus causing, permitting and allowing Nygaard to perform negligent inspections and certifications and/or to issue fraudulent inspection reports, which culminated in the Subject Incident." Id. at 322. According to the First Amended Complaint, "Nygaard failed to conduct his inspection [of Boiler 3] in accordance with the Code" and "failed to warn of and/or improperly permitted and/or endorsed the continued dangerous and careless operation of [Boiler 3]." Id. at 272. The First Amended Complaint alleges, in sum, that Nygaard failed to conduct his inspection in accordance with applicable standards; that his negligent inspection and failure to warn of a hazardous condition proximately caused bodily injury and death; and that Alstom is liable under respondeat superior as well as liable for its own failure to supervise. See J.A. at 272, 316-23, 363-69, 409-15, 451-56, 492-98, 524-27.

Zurich argues that with respect to the state plaintiffs' claims against Dominion, however, the factual allegations implicate "the active and exclusive negligence or gross negligence of the Dominion defendants." Def.'s Summ. J. Opp'n at 11-12. That claim is unsupported on the face of the state complaint. Indeed, the First Amended Complaint alleges that Dominion acted negligently, inter alia, "by failing to carry out inspections[,] by failing to undertake further inspection procedures in the Dead Air Space, by failing to inspect the pipe welds by available methods, [and] by engaging in a course of conduct which would ignore necessary inspection procedures and repairs in order to avoid a plant and/or boiler shut down." J.A. at 279. The First Amended Complaint also alleges

14

that, despite Dominion's having "made, supervised, contracted for and/or ordered and performed repairs" of parts of Boiler 3, it "failed to have repairs inspected in accordance with the Code," id. at 267, and "delegated to unlicensed personnel the task of determining whether further investigation, maintenance or inspection of the Dead Air Space of Boiler Number 3 was necessary or required," id. at 268.

At a minimum, Dominion contracted with Alstom to inspect "selected boiler pressure parts, enclosures and ductwork" of Boiler 3 and to "provide daily inspection findings and recommendations and a final report."  Id. at 190.  On a reasonable reading of the factual allegations of the First Amended Complaint, Dominion may be found liable, not for its own exclusive negligence, but for negligent work performed by Alstom, including negligent inspections by Nygaard that, among other things, failed to indicate the need for further inspection of parts of Boiler 3.  On a reasonable reading of the factual allegations of the First Amended Complaint, Dominion may also be found liable for its general supervision of Alstom's work.  Both Alstom's work for Dominion and Dominion's general supervision of that work are expressly covered by the Zurich Policy, as amended by the Automatic Additional Insured endorsement.  See J.A. at 82.

Regardless of whether any of these claims proves meritorious, they potentially fall within Dominion's coverage as an additional insured under the Zurich Policy and, hence, trigger Zurich's duty to defend.

## V.    CONCLUSION

For the reasons set forth above, the court **DENIES** Zurich's Motion to Transfer (Doc. No. 24) and **GRANTS** Dominion's Motion for Partial Summary Judgment (Doc. No. 31) on the duty to defend.

**SO ORDERED.**

Dated at New Haven, Connecticut this 18th day of October, 2013.

_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge