## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DOMINION ENERGY, INC. et al., | | CIVIL ACTION NO. |
| Plaintiffs, | | 3:13-CV-156 (JCH) |
| v. | | |
| ZURICH AMERICAN INS. CO., | | |
| Defendant. | | MARCH 3, 2015 |

**RULING RE: PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON ZURICH'S LIABILITY FOR: (I) "PRE-TENDER" COSTS; (II) PREJUDGMENT INTEREST; AND (III) FEES INCURRED TO ESTABLISH THE EXISTENCE AND EXTENT OF ZURICH'S DUTY TO DEFEND (Doc. No. 56)**

Plaintiffs Dominion Energy Inc., Dominion Generation Corporation, Dominion Technical Solutions, Inc., and Dominion Resources, Inc. (collectively, "Dominion") brought this action against defendant Zurich American Insurance Company ("Zurich") to establish Zurich's duty to defend Dominion in ongoing litigation in Massachusetts ("the Massachusetts Action").  Having established Zurich's ongoing duty to defend, see Ruling Re: Defendant's Motion to Transfer (Doc. No. 24) and Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 31) ("October 2013 Ruling") (Doc. No. 42), Dominion now seeks partial summary judgment on three issues, to wit, Zurich's liability for: litigation costs (including fees) that Dominion incurred before April 1, 2011, when it requested that Zurich defend it in the Massachusetts Action, interest on any award of costs of litigation the Massachusetts Action (both before and after April 1, 2011), and the costs (including fees) of the present action.  See Plaintiffs' Motion for Partial Summary Judgment on Zurich's Liability for: (i) "Pre-Tender" Costs; (ii) Prejudgment

Interest; and (iii) Fees Incurred to Establish the Existence and Extent of Zurich's Duty to

Defend (Doc. No. 56).  The Motion is granted in part and denied in part.

## I.    FACTS[1]

Dominion owns and runs power generation facilities including the Salem Harbor

Generating Station in Salem, Massachusetts ("the Salem Station").  JSF ¶¶ 3, 15.

Alstom Power, Inc., ("Alstom") performs inspections of facilities including the Salem

Station.  Id. ¶ 15.  Risk Enterprise Management, Limited ("REM") is a third-party

administrator of claims for Alstom.  Id. ¶ 29.  Zurich is an insurer.  Id. ¶ 7.

On February 1, 2005, Dominion and Alstom entered into an agreement ("the

Alliance Agreement") providing, inter alia, that, Alstom would obtain and maintain

general commercial liability insurance coverage as to certain inspections that it would

perform for Dominion, and it would name Dominion as an additional insured under said

insurance.  Id. ¶¶ 3–5, 14.  The Alliance Agreement further provides that Alstom will "at

Dominion's sole option, defend Dominion . . . against" lawsuits.  JSF ¶ 6; RA at 145.

Alstom's corporate parent purchased from Zurich a commercial liability insurance

policy with a coverage period of April 1, 2007 to April 1, 2008 ("the Zurich Policy" or "the

Policy").  JSF ¶¶ 7, 11.  Although the Zurich Policy does not explicitly name Dominion

as an insured, a term in the Policy provides indirectly for Dominion's coverage because

it states that entities in addition to Alstom are automatically insured if Alstom has agreed

---

[1] The court derives the following from a set of facts and documents as to whose authority the parties have stipulated, see Joint Statement of Facts ("JSF") (Doc. No. 57); Stipulated Record Appendix ("RA") (Doc. No. 34); while "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party," Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013).

to name them as an insured with respect to services Alstom has performed for them. Id. ¶¶ 12–14.

The Zurich Policy provides, inter alia, that the insured "must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim," and, similarly, that "you must . . . [n]otify us as soon as practicable" "[i]f a claim is made or a 'suit' is brought against any Insured."  JSF ¶ 28 (quoting § IV.2 of the Zurich Policy).  The Policy further provides that the insured "must . . . [c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit.'"  Id.  (The parties do not provide any stipulation to the effect that the Zurich Policy requires any formal demand for defense before Zurich becomes obligated to defend an insured.)

In early April 2007, in an inspection pursuant to the Alliance Agreement, Service Engineer Dennis Nygaard of Alstom inspected Boiler Number 3 at the Salem Station. Id. ¶ 21.  On November 6 of the same year, a steam explosion of Boiler Number 3 caused the deaths of three individuals ("the decedents") and allegedly injured two more. Id. ¶ 22.

On December 10, 2007, REM sent, and Zurich received, a notice that the steam explosion had occurred at a Dominion power generation facility, that Dominion was a client of Alstom, that this event "could potentially involve" the Zurich Policy, and that "we are providing provisional notice of this matter to Zurich . . . [and] respectfully request[ing] all available insurance coverage issued by Zurich to Alstom . . . including but not limited to defense and indemnity."  Id. ¶¶ 29–30; REM Notice (Doc. No. 57-1) at 1.  (The parties do not stipulate to any facts about any response or failure to respond to this notice by Zurich.)

On May 5, 2009, the decedents' estates and others instituted the Massachusetts Action against Dominion, Alstom, Nygaard, and others.  JSF ¶ 25.  The summons in the suit was dated July 1, 2009.  Id. ¶ 31.  Zurich received notice of the action on July 9, 2009.  Id.

On April 1, 2011, while discovery was ongoing in the Massachusetts Action, Dominion requested that Zurich provide a defense in the Massachusetts Action to Zurich.  Id. ¶ 32.[2]

On December 1, 2011, Zurich responded to Dominion "that it could have no defense-related obligation to Dominion under the Zurich Policy before a determination of the relative fault, if any, of Dominion and Alstom in the Massachusetts Action."  Id. ¶ 34.  Zurich never subsequently agreed to furnish Dominion with a defense or to reimburse Dominion for any of its costs of defense in the Massachusetts Action.  Id. ¶ 35.

On February 1, 2013, Dominion instituted the present action against Zurich.  See Complaint (Doc. No. 1).  Zurich moved to change the venue of the action to the United States District Court for the District of Massachusetts, contending, inter alia, that such transfer was warranted on the basis that Massachusetts law applied and that a Massachusetts federal court would more easily be able to apply Massachusetts law.  See Defendant Zurich American Insurance Company's Motion for Transfer of Venue Under 28 U.S.C. § 1404(a) (Doc. No. 24); Defendant's Memorandum in Support of Its

---

[2] In the JSF, the parties stipulate that "Dominion requested that Zurich provide it with a defense in the Massachusetts Action, i.e., it 'tendered' the defense of the Massachusetts Action to Zurich, on April 1, 2011."  JSF ¶ 32.  The parties do not cite documentary evidence of the request (e.g., a letter).  The court will not describe the April 1, 2011 request for defense using the term "tender" because the use of this term suggests a legal conclusion rather than a state of facts and the legal question of when "tender" occurred is one of the central legal issues that the parties presently contest.

Motion for Transfer of Venue Under 28 U.S.C. § 1404(a) (Doc. No. 25).  On June 14,

2013, Dominion filed a Motion for Summary Judgment as to Zurich's duty to defend.

See Plaintiffs' Motion for Partial Summary Judgment on the Duty to Defend (Doc. No.

31).  Without resolving the question of which state's law applies generally in the action,

the court declined to transfer the action and granted the Motion for Partial Summary

Judgment.  See October 2013 Ruling.

## II.    STANDARD OF REVIEW

Granting a motion for summary judgment is proper only if "there is no genuine

issue of material fact and the moving party is entitled to judgment as a matter of law."

O'Hara v. Nat'l Union Fire Ins. Co., 642 F.3d 110, 116 (2d Cir. 2011).  Thus, the court's

role in deciding such a motion "is to determine whether genuine issues of material fact

exist for trial, not to make findings of fact."  Id.  In making this determination, the court

"must resolve all ambiguities and draw all inferences against the moving party."  Garcia

v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013).

The moving party bears the burden of establishing the absence of genuine

issues of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d

Cir. 2010).  If the moving party meets that burden, the party opposing the motion will

only prevail if it sets forth "specific facts" that demonstrate the existence of "a genuine

issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ.

P. 56(e)).

For summary judgment purposes, a genuine issue exists where the evidence is

such that a reasonable jury could decide in the non-moving party's favor.  See Rivera v.

Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 693 (2d Cir. 2012); see also

Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 104 (2d Cir. 2011) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that the non-moving

party must point to more than a mere "scintilla" of evidence in its favor).  Mere

conclusory statements or allegations are not sufficient to defeat a summary judgment

motion.  Davis v. N.Y., 316 F.3d 93, 100 (2d Cir. 2002).

## III.   DISCUSSION

    A.    <u>Costs of defense paid by Dominion before the April 1, 2011 request for defense</u>

Dominion moves for summary judgment as to Zurich's liability for the litigation

costs that Dominion paid to defend against the Massachusetts Action preceding April 1,

2011, when Dominion requested that Zurich defend it in the Massachusetts Action.

    1.    Conflict-of-laws determination

The parties dispute which state's law governs the issues in the pending Motion.

Whether the court applies the law of Massachusetts or Connecticut (these being the two

states whose laws the parties argue apply here) will result in several substantially

different conclusions as to each major issue in this Ruling.  Accordingly, before

resolving the question of liability for defense costs paid by Dominion before the request

for defense or any other substantive legal issue, the court must first determine what law

applies in this case.

This court applies Connecticut conflict-of-law rules because, in determining the

governing law in a diversity case, a district court is to apply the conflict-of-law rules

applicable to the state in whose territory it sits.  See Klaxon Co. v. Stentor Elec. Mfg.

Co., 313 U.S. 487, 496 (1941).

a.      The "special presumption" of section 193 of the Restatement

With respect to conflict-of-law determinations in insurance contract suits, the

Connecticut Supreme Court has held that "the . . . special presumption [of section 193

of the Restatement (Second) of Conflict of Laws], rather than the . . . general

presumption [of section 188, regarding contract actions generally], should apply in

cases involving liability insurance policies that cover immovable risks located in more

than one state."  Reichhold Chems., Inc. v. Hartford Accident & Indem. Co., 243 Conn.

401, 416 (1997).

The "general" presumption of section 188 as to conflict-of-law determinations for

any contract dispute is that, "[i]f the place of negotiating the contract and the place of

performance are in the same state, the local law of this state will usually be applied

. . . ."  Restatement (Second) of Conflict of Laws § 188.

As for section 193, there is some ambiguity as to what precisely the rule is that

Reichhold endorsed.  Looking to one part of the Reichhold opinion, Dominion argues

that the proper rule is that the presumptively-applicable state law is that of the actual

location of the immovable insured risk relevant to the litigation.  See Reichhold, 243

Conn. at 411–12 (referring several times to a "presumption in favor of application . . . of

the law of the jurisdiction that is the principal location of the insured risk" without

referring to the parties' understanding of where the location was to be).  Of course, as

neither party contests, the relevant insured risk, the Salem Station, is immovable and

located in Massachusetts.[3]  If the proper inquiry is as to the actual principal location, then the proper presumption would be that Massachusetts law applies.

Looking to parts of the <u>Reichhold</u> opinion in which the Court quotes verbatim from and/or states without exception that it was "adopt[ing]" the Restatement, Zurich argues that the presumptively-applicable state law is that of the location where <u>the parties understood</u> the immovable insured risk was to be.  <u>See, e.g.</u>, <u>id.</u> at 414.  The words of the Restatement itself provide that the state law which presumptively applies is that "which <u>the parties understood</u> was to be the . . . location of the insured risk."  Restatement (Second) of Conflict of Laws § 193 (emphasis added).  Zurich argues, assuming this reading is correct, that because the parties did not understand the relevant immovable insured risk to be anywhere in particular when the contract was executed, section 193's presumption does not apply.  It goes on to argue that a different rule applies and that the proper inquiry requires the conclusion that Connecticut law controls the merits of the issues presently before the court.

It is unnecessary for the court to resolve this apparent ambiguity in <u>Reichhold</u>. Even assuming that Zurich's rule is the correct one, Zurich's application of the rule is incorrect: even under Zurich's reading of <u>Reichhold</u>, the only proper conclusion from the undisputed facts in this case is that, although the Policy does not explicitly mention an

---

[3] Because Zurich has not argued that the insured risk should be construed as anything other than the Salem Station (and even appears to proceed on the assumption that the Salem Station is the relevant risk), the court finds that Zurich has abandoned any argument to the contrary and summarily adopts the (quite reasonable) legal conclusion apparently proposed by Dominion that the Salem Station is the relevant risk—or, at the very least, that the relevant risk is immovable and is located in Massachusetts. See <u>Jackson v. Fed. Express</u>, 766 F.3d 189, 198 (2d Cir. 2014); Plaintiffs' Memorandum in Support of Their Motion for Partial Summary Judgment on Zurich's Liability for: (i) "Pre-tender" Costs; (ii) Prejudgment Interest; and (iii) Fees Incurred to Establish the Existence and Extent of Zurich's Duty to Defend ("Pls.' Mem.") (Doc. No. 58) at 14–15.

insured risk in Massachusetts, the parties must be deemed to have been aware that the relevant immovable risk at issue in this case was to be located in Massachusetts by extension from the terms of the Policy and other documents referred to and already executed at the time of the Policy's issuance.

As Zurich itself asserts, the Policy "expressly covered Alstom's operations nationwide." Memorandum of Zurich American Insurance Company in Opposition to the Plaintiffs' Motion for Partial Summary Judgment ("Opp.") (Doc. No. 59) at 8; RA at 88, 103. At the time of the agreement, April 2007, Alstom had already agreed (on February 1, 2005) to name Zurich as an additional insured on a policy that it would obtain for liability for insurance. The Zurich Policy stated in an "automatic additional insured" section that Dominion would be covered by extension from this fact. As a consequence, for the purpose of applying this rule, Zurich, which explicitly understood that immovable insured risks were to be located at locations "nationwide" (a geographical area covering Massachusetts), can only be deemed to have understood that some insured risks might be located in Massachusetts. Zurich cannot now claim lack of knowledge that an insured risk was located in Massachusetts on the basis of its failing to inquire as to the actual location of every insured risk associated with the automatic additional insureds covered under the Policy, especially not when the immovable insured risk covered by the terms of the Policy was established even prior to the Policy's execution.

Nor, the court briefly notes, is the fact that the Policy covered a number of risks nationwide a bar to the application of Massachusetts law for immovable risks in Massachusetts (and likewise, mutatis mutandis, for immovable risks in other states). Reichhold holds, in square opposition to Zurich's suggestion, see Opp. at 10–11, that a

policy's coverage of immovable risks in more than one state does not affect the application of section 193's special presumption with respect to lawsuits arising out of any given risk: if the law to be applied with respect to each is different in different cases, so be it.  See Reichhold, 243 Conn. at 417 (citing Restatement (Second) of Conflict of Laws § 193 cmt. f).

Accordingly, the court concludes that, under Connecticut law, section 193's special presumption applies to establish Massachusetts as the state whose law presumptively applies to this action.

b.      No opposition to the special presumption

Because Zurich makes no argument that "some other state [besides Massachusetts] has a more significant relationship under the principles stated in § 6 [of the Restatement] to the transaction and the parties" so as to defeat section 193's special presumption, and the court itself discerns no basis for upsetting this presumption, see Restatement (Second) of Conflict of Laws § 193, the court concludes that this special presumption is sufficient to establish Massachusetts law as applicable.

c.      Massachusetts law applicable to the remainder of the Ruling

Although the analysis of the proper choice of state law with respect to one issue in a case "does not preclude the application of the law of a[nother] state . . . to other issues in the case . . . [where there is] apparent similarity of concerns with respect to the [multiple sets of] issues . . . , a principled explanation would be required to justify [applying a] different [state's law]."  Reichhold Chems., Inc. v. Hartford Accident & Indem. Co., 252 Conn. 774, 783–84 (2000).  Here, the court discerns no reason why the same choice-of-law analysis should not apply to all issues presently before the court,

each of which relates to the same set of contracts and arises out of the same event (the explosion), which gave rise to the same underlying litigation.  Nor do the parties present any reason.  Accordingly, the court applies Massachusetts law throughout this Ruling.

          2.     Merits determination as to liability for payments before April 1, 2011

Having determined that Massachusetts law applies, the court returns to the question of liability for litigation costs incurred prior to Dominion's April 1, 2011 request for defense.

Dominion argues that, because Zurich was on notice that a defense would likely be necessary, when the explosion occurred, and ultimately was necessary, when the suit was filed, and because Zurich suffered no prejudice by Dominion's failure to provide a defense request at an earlier date, Dominion is entitled to pursue even those costs from prior to its request.  Zurich argues that it is liable only for those costs arising after its December 1, 2011 refusal of Dominion's request for defense.

Dominion relies on the Massachusetts Supreme Judicial Court's (SJC) Sarnafil decision.  See Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295 (1994).   Zurich contends that the best reading of controlling law, including Sarnafil, is that, if an insured has not yet requested a defense, an insurer is not liable for the litigation costs that the insured incurs.

At oral argument, the court inquired of the parties as to a Massachusetts case, not cited by either party in any of the papers associated with the present Motion, that appears closely analogous to the one at bar: Boyle v. Zurich Amer. Ins. Co., No. MICV2011-02244, 2014 WL 4082302,  32 Mass. L. Rptr. 352 (Mass. Super. Ct. June 23, 2014).  In Boyle, the Massachusetts Superior Court relied on Sarnafil to conclude

that the correct rule under Massachusetts law is that "mere knowledge that an insured

has been sued . . . trigger[s] an insurer's duty to defend[, even where] actual notice

[comes] from a third party . . . ." <u>Id.</u> at *11.

Counsel for Zurich represented to the court at oral argument (and the court has

confirmed) that <u>Boyle</u> is presently on appeal to the SJC, which exercised its power to

hear the case on direct review from the Superior Court's ruling.  <u>See Boyle v. Zurich</u>

<u>Amer. Ins. Co.</u>, No. SJC-11791, No. 2014-P-1399, No. DAR-22873 (Mass.); Mass. R.

App. P. 11(a) (providing that direct appellate review may be granted by the SJC for,

<u>inter alia</u>, "questions of first impression or novel questions of law which should be

submitted for final determination to the Supreme Judicial Court" and "questions of such

public interest that justice requires a final determination by the full Supreme Judicial

Court").  The case is already briefed by both parties.  Counsel for Zurich represented at

oral argument that the case is set for argument in April 2015.  The SJC has also

requested amicus briefs, and at least one has been filed so far.  The issue in the case,

as stated by the SJC, is

> [w]hether the notice that is required to be given by an insured to its insurer under
> the terms of a policy (of a pending lawsuit against the insured) in order to trigger
> the insurer's duty to defend, must come directly from the insured in compliance
> with the terms of the policy, as opposed to from some other source, in order to
> give rise to the insurer's obligation; whether an insured's failure to give any kind
> of notice under the policy precludes coverage, as the insurer contends, or, as the
> judge ruled, only precludes coverage when the absence of such notice actually
> prejudices the insurer.

<u>Boyle</u>, No. SJC-11791 (Doc. No. 3; Announcement) (Dec. 29, 2014).

As a general rule, "the difficulties of ascertaining what the state courts may

hereafter determine the state law to be do not in themselves afford a sufficient ground

for a federal court to decline to exercise its jurisdiction to decide a case which is

properly brought to it for decision." <u>Meredith v. City of Winter Haven</u>, 320 U.S. 228, 234 (1943).  Nonetheless, several factors warrant this court's conclusion that a delay of decision of the present issue is appropriate here.  The SJC's decision in <u>Boyle</u> is quite likely to dispose of the present issue in its entirety.  Moreover, the SJC has apparently decided that the issue is an important one, even if it does not appear to be "intimately involved with [the] sovereign prerogative" of Massachusetts.  <u>Louisiana Power & Light Co. v. City of Thibodaux</u>, 360 U.S. 25, 28 (1959).  And state proceedings are not merely ongoing before a state trial court; instead, a final decision from the highest court in Massachusetts appears to be imminent.  Awaiting decision by the SJC may result in substantially more effective use of resources by both the judiciary and the parties because it will substantially reduce the likelihood of relitigation of this issue in this case, whether before this court or before the Court of Appeals.  <u>See</u> <u>In re President and Fellows of Harvard College</u>, 149 F.2d 69, 72–73 (1st Cir. 1945) (endorsing stay under hypothetical situation in which suit between different parties on potentially controlling issue were pending before both the state supreme court and a federal district court and, "if the plaintiff . . . should obtain a verdict and judgment [in the federal district court], and appeal therefrom were taken to the Circuit Court of Appeals, that court would be obliged to reverse the judgment if, while such appeal were pending, the supreme court of the state should hand down [a contrary] decision").  Finally, of key importance is that this court is "merely stay[ing] adjudication of the federal action pending the resolution of an issue in state court, [not] dismiss[ing] the federal action altogether."  <u>Quackenbush v. Allstate</u>, 517 U.S. 706, 721 (1996) (emphasizing importance of district judge's choice to stay the proceedings in <u>Thibodaux</u> rather than dismissing the case outright).

The court thus denies summary judgment on this issue, without prejudice to the parties' moving for summary judgment anew on a reasonable briefing schedule after the final disposition of Boyle by the SJC.

B.     Interest on award of costs of defense in Massachusetts Action

Dominion argues that, assuming Massachusetts law applies, it is entitled to 12% per annum interest on any award of costs of defense in the Massachusetts Action, calculated as of the later of the date of request (April 1, 2011) or the date that costs actually became due.  Zurich concedes that Massachusetts law requires a 12% interest award, but argues that the interest should be calculated from the later of the date of its refusal to provide a defense, which it proposes is December 1, 2011, or the date that Dominion actually paid its costs, and that, further, as a matter of "convenience," Opp. at 29, the court should allow the legal fiction that all payments in any given year occurred on December 31 of that year.[4]

Under Massachusetts law, a party obtaining damages in a contract action is entitled as a matter of right to "interest . . . at the rate of twelve per cent per annum." Mass. Gen. L., c. 231, § 6C.  See Pls.' Mem. at 29–30; Opp. at 28–29.  In a suit to recover defense costs under an insurance contract such as this one, interest is to be calculated from (1) the earliest determinable date of wrongful withholding, or (2) the date that the expense was actually paid—whichever of these two is later.

_____

[4] Although there appeared to be some question as to whether the applicable policy limits have been reached, Zurich stipulates that, under the governing terms of the Zurich Policy, it is liable for prejudgment interest (should such an award be appropriate) without regard to the Policy limits; likewise as to fees of prosecuting the present action, see Part III.C infra.  See Joint Statement Regarding Effect of Exhaustion Of Policy Limits on Dominion's Claim for Interest and Attorneys' Fees (Doc. No. 65) (citing Mass. Gen. L. c. 231, §6C; Hanover Ins. Co. v. Golden, 436 Mass. 584, 585, 588–89 (2002). Accordingly, there does not appear to be any question that any of the disputes in the present motion are moot.

1.    No earlier than the wrongful withholding began

The first question, then, is the date of wrongful withholding.  See Mass. Gen. L. c. 231, § 6C (providing that prejudgment interest shall be added to certain money judgments as calculated "from the date of the breach or demand[, or, i]f the date of the breach or demand is not established, . . . from the date of the commencement of the action . . . .").  The court refers to the dates of breach, demand, and commencement of suit to determine the wrongful withholding date in effectuation of the policy that "[i]nterest is awarded by law so that a person wrongfully deprived of the use of money should be made whole for his loss."  Perkins School for Blind v. Rate Setting Commission, 383 Mass. 825, 835 (1981).

Of course, "there can be no improper detention of money until payment is due." Id. at 831.   Sometimes a party to a contract need not demand payment for money to become due; other times, a party might demand money before it is due.  In both such cases, it would be inappropriate to inquire when "demand" occurred; a court would instead look simply to the due date.  Where, as here, an insured demands performance due immediately from an insurer as a matter of contractual right, the proper inquiry is as to the date of demand.  Cf. id. at 836 (determining that interest was to be calculated from a date later than the demand only because the plaintiff did not actually have a legal right to payment until the Massachusetts government, through its agency, determined that a later adjustment in the rate of reimbursement would apply retroactively).

The court notes that in Sterilite Corp. v. Continental Cas. Co., the SJC stated that "the defendant was in breach of its duty to defend Sterilite on [the date that it refused to defend]."  397 Mass. 837, 841 (1986).  One might incorrectly draw the conclusion that

15

the inverse was also meant to be true: that a defendant insurer is not in breach of its duty to defend until it refuses to defend.  However, <u>Sterilite</u> does not so hold, nor is such a conclusion necessarily implied or rightly inferred from in the decision.  Indeed, the present question was not even raised in that case: apparently, the party raising this issue (and causing this statement's appearance in the opinion) only argued that an <u>even later</u> date might have been applicable—not an earlier date (which, of course, the demand date was).[5]  Finally, for the reasons already stated, reading <u>Sterilite</u> as Zurich suggests would be inconsistent with the principles of wrongful withholding and the consequent concern with withholding money beyond its due date that motivate section 6C of chapter 231 of the Massachusetts General Laws, as the SJC has explained in decisions both prior and subsequent to <u>Sterilite</u>.  <u>See</u> <u>Bank v. Thermo Elemental Inc.</u> 451 Mass. 638, 662 (2008); <u>Perkins</u>, 383 Mass. at 835–36 (both describing wrongful withholding as the relevant issue).

Thus, Zurich's suggestion that interest should be charged from no earlier than December 1, 2011, the date that it responded to Dominion's defense request "that it could have no defense-related obligation to Dominion under the Zurich Policy before a determination of the relative fault, if any, of Dominion and Alstom in the Massachusetts Action," JSF ¶ 34, is without justification.  This result would inappropriately encourage delay on the part of an insurance company receiving a request for defense.  How long would be long enough to deem a nonresponse as a denial?  Indeed, it might even

---

[5] The trial court had apparently used the date of the insurer's refusal to defend as the date from which the <u>entire</u> interest award ran—even for payments not made until a later time.  <u>Sterilite</u>, 397 Mass. at 838.  The insurer appealed in part on the grounds that calculating interest to run from later dates was appropriate where the insured made the relevant payments at such later dates.  <u>Id.</u> at 841; <u>see also</u> Part III.B.2 <u>infra</u>.  The insured did not cross-appeal (as apparently it might have) to argue that a date earlier than the date of refusal might have been appropriate.

inspire insurance companies not to respond at all.  See Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 304–05 (1994).  Notably, it is not even clear from the parties' description of the response that Zurich provided on December 1, 2011, that it intended to deny coverage outright, given the somewhat equivocal nature of its denial.  The insurer is the expert as to determining liability; it is obligated to take action once a sufficient request is made.  See id.

Although Dominion contends that Zurich was obligated to defend it before Dominion made the April 1, 2011 request for defense, see Part III.A.2 supra, Dominion (apparently inconsistently) only claims entitlement to pre-judgment interest running from its April 1, 2011 request for defense.  Of course, Zurich does not object to Dominion's taking this position and thus seeking a smaller award of interest than it might. Accordingly, for any chargeable costs paid by Dominion on or before April 1, 2011, Zurich will be liable for interest running from April 1, 2011.

2.     Between the first wrongful withholding date and the date of payment, the later of the two

"[W]hen expenses incurred as a result of a contract breach are not paid [i.e., advanced,] by a plaintiff until after [the demand or] the breach has occurred, the interest is calculated not from the date of the breach or even the date the action was commenced . . . , but from the date or dates on which the plaintiff made such payments."  Thermo Elemental, 451 Mass. at 662–63 (emphasis added).  In other words, as of the date of wrongful withholding, see Part III.B.1 supra, interest begins to run for post-breach/post-demand defense costs as they are paid—as if the plaintiff were making seriatim demands of the defendant to reimburse it simultaneously with each new payment.  See Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 841–42

(1986).  Thus, for all of Dominion's applicable costs paid after April 1, 2011, interest is to be calculated not from April 1, 2011, but from the date those fees were paid.

        3.     Convenience and the legal fiction of December 31 payments

Zurich argues that, under the general rubric of calculation from the date of payment, interest in this case should actually be calculated from December 31 of the year that Dominion made the relevant payment.  However, this approach might bestow an unnecessary and thus an inappropriate windfall on Zurich.  See Thermo Elemental, 451 Mass. at 662 (describing purpose of "award of prejudgment interest" as making "a person wrongfully deprived of the use of money . . . whole for his loss").  To this extent, it would be impermissible.

In Thermo Elemental the SJC did not reverse a trial court's decision to calculate interest from the last day of the year in which expenses were paid.  See id. at 917–18.  However, that case presented a complex fact scenario, with a third party making payments on behalf of the plaintiff-insured, apparently with significant delays, irrespective of the reimbursements later sought in litigation.  The trial court in that case apparently drew the fictive conclusion that all payments were made on the last day of the year rather than directly in the middle of the year (which would otherwise be the fairest approximation) in order to adjust for delays common to the entire history of payment in that case.  Moreover, the trial court's determination in that case was based on limited evidence presented at trial, whereas here the parties do not present the court with a mess of information, let alone incomplete information, and ask the court to sort it all out.  Under the circumstances of Thermo Elemental, the "approximation employed by

the judge" was appropriate, but that decision does not preclude a more precise determination where feasible.  Id. at 918.

In this case, the court has been presented with no actual schedule of costs and corresponding interest calculations, so it is without sufficient facts to adjudicate this matter on summary judgment.  Accordingly, the court concludes that, as a general rule, Zurich is liable to Dominion for interest on applicable costs calculated from the date that Dominion actually paid such costs, but reserves judgment on whether it will be necessary or not to make any kind of estimation in awarding interest as the Thermo Elemental Court did.

     C.    Costs of the present action

Dominion argues that it is entitled to the costs (including legal fees) of prosecuting the present action not just to establish Zurich's ongoing obligation to defend Dominion, but also to establish Zurich's liability to Dominion for costs of defense previously advanced by Dominion.  Zurich argues that Dominion is not so entitled (1) because it is an additional insured rather than simply an insured, did not pay premiums, and thus is not within the scope of the rule providing for recovery of such costs; (2) insofar as it seeks fees for anything beyond the question of Zurich's defense obligation.

     1.    Award for an additional insured

"[A]n insured is entitled to the reasonable attorney's fees and expenses incurred in successfully establishing the insurer's duty to defend under the policy" irrespective of "whether an insurer contests an insured's claim in good or bad faith" because the ultimate goal is to secure for the insured "the benefit of his bargain."  Rubenstein v.

Royal Ins. Co. of America, 429 Mass. 355, 359–60 (1999).  Giving Rubenstein a hypertextualist reading, Zurich argues that because Dominion is an "additional insured" rather than an "insured"—because it did not "'pa[y] premiums to'" or "'purchase[ ] . . . insurance [directly] from'" Zurich, id. at 360—it falls outside this rule.

The correct rule is to the contrary, however: that Dominion is an additional insured does not preclude it from obtaining fees for this action to establish Zurich's duty to defend.  Zurich's proposal runs counter to the rule under Massachusetts law that, in relation to the insurer, an additional insured stands in the shoes of the party that provided for it to be named as such in the policy, irrespective of whether the additional insured provided valuable consideration for such coverage or even had any expectation of coverage.  See Crompton v. Lumbermens Mut. Cas. Co., 333 Mass. 160, 162–65 (1955).  Even assuming that the payment of premiums or purchase of a policy were the decisive factor, presumably Dominion did provide valuable consideration for this insurance coverage to Alstom, the original insured, as part of its bargain for a broader array of services from Alstom.  Just as denying Alstom attorney's fees in an analogous action would "deny [it] the benefit of [its] bargain," Rubenstein, 429 Mass. at 360, so too would denying Dominion fees here deny Dominion the benefit of its bargain—a bargain for insurance, even if not directly with Zurich.

### 2.    Scope of award available

Whenever an insured "establishe[s] that the [insurer] violated its duty to defend them in the [underlying] action, [the insured is] entitled to an award of the reasonable attorney's fees and expenses incurred in the declaratory judgment action."  Rubenstein, 429 Mass. at 360; see also id. at 358 ("An insured is entitled to attorney's fees . . .

whenever the insured establishes that the insurer violated its duty to defend.").  Under this rule, Dominion is entitled to its reasonable costs in this action to the extent that it prevails.

Zurich contends that, while Dominion may be entitled to reasonable fees related to its pursuit of the court's October 2013 Ruling establishing Zurich's ongoing duty to defend, Dominion is not entitled to fees beyond that Ruling (such as those related to the present Motion).  Zurich relies on Global Investors for this argument, but it overreads that case.  See Global Investors Agent Corp. v. Nat'l Fire Ins. Co. of Hartford, 76 Mass. App. Ct. 812 (2010).  In that case, the insureds first successfully litigated the existence and scope of the insurer's duty to defend and then unsuccessfully sought consequential and punitive damages ancillary to the insurer's failure to defend.  See id. at 813–14 (noting allegations of "breach of contract[,] breach of the covenant of good faith and fair dealing," and "unfair and deceptive practices in violation of G.L. c. 93A and G.L. c. 176D").  The Massachusetts Appeals Court affirmed the decision to deny the insureds any attorney's fees award beyond what was necessary to establish the duty to defend.  However, the court's basis for denying the award was not entirely clear.  The court may have deemed an award inappropriate because the insureds' later pursuits were largely unsuccessful.  Or, it could be that the court deemed these pursuits to be largely irrelevant to the existence and scope of the duty to defend.  In any event, this court does not read that case to preclude a fee award in this case, in which Dominion simply seeks to establish the scope of an insurer's liability for the costs of defense in an underlying action.  Accordingly, to the extent that it actually prevails, Dominion is

entitled to seek an award of reasonable costs (including fees) in this action beyond the October 2013 Ruling.

IV.     **CONCLUSION**

The Motion for Partial Summary Judgment (Doc. No. 56) is **DENIED IN PART WITHOUT PREJUDICE** as to the issue of Zurich's liability for defense costs paid by Dominion before April 1, 2011, and is otherwise **GRANTED** to the extent provided in the foregoing discussion.  The parties are directed to file with this court a notice upon the final disposition of the Boyle case by the Supreme Judicial Court of Massachusetts.

**SO ORDERED**.

Signed at New Haven, Connecticut this 3rd day of March 2015.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge