**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| | : | |
| DOMINION ENERGY, INC. et al., | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:13-CV-00156 (JCH) |
| | : | |
| ZURICH AMERICAN INS. CO., | : | |
| Defendant. | : | MARCH 15, 2016 |
| | : | |

**RULING RE: PLAINTIFFS' RENEWED MOTION FOR PARTIAL SUMMARY
JUDGMENT ON ZURICH'S LIABILITY FOR "PRE-TENDER" COSTS IN LIGHT OF
BOYLE V. ZURICH AMERICAN INS. CO. (DOC NO. 78)**

I.    **BACKGROUND**

Pending before the court is a renewed Motion for Partial Summary Judgment filed by plaintiffs Dominion Energy, Inc., Dominion Generation Corporation, Dominion Technical Solutions, Inc., and Dominion Resources, Inc. (collectively, "Dominion") against defendant Zurich American Insurance Company ("Zurich"). See Pls.' Renewed Mot. for Partial Summ. J. on Zurich's Liability for "Pre-Tender" Costs in Light of Boyle v. Zurich American Ins. Co. ("Pls.' 2015 Mot. for Summ. J.") (Doc. No. 78).  The court has previously ruled on a number of Motions filed by the parties, which makes the issue presented by Dominion's renewed Motion for Partial Summary Judgment exceedingly narrow.  A brief recitation of the history of this case will help to clarify the scope of the issue presented in the pending Motion.

Dominion initiated this lawsuit by a Complaint filed on February 1, 2013.  See Compl. (Doc. No. 1).  Dominion sought principally to establish that Zurich has an ongoing duty to defend Dominion in litigation ("the Massachusetts Action") related to an industrial accident that resulted in the deaths of three people and the alleged injury of

1

two others, as well as to receive damages for Zurich's alleged breach of their duty to defend.  See id. at 9; see also Joint Statement of Facts ("JSF") ¶¶ 22, 25 (Doc. No. 57).  Zurich subsequently moved to transfer the case to the United States District Court for the District of Massachusetts, see Def. Zurich American. Ins. Co.'s Mot. for Transfer of Venue under 28 U.S.C. § 1404(a) (Doc. No. 24), and Dominion moved for summary judgment on the question of whether Zurich had a duty to defend Dominion in the Massachusetts Action, see Pls.' Mot. for Partial Summ. J. on the Duty to Defend ("Pls.' 2013 Mot. for Summ. J.") (Doc. No. 31).  On October 18, 2013, the court denied Zurich's Motion to Transfer and granted Dominion's first Motion for Partial Summary Judgment, concluding that Zurich had an ongoing duty to defend Dominion in the Massachusetts Action.  See Ruling Re: Def.'s Mot. to Transfer (Doc. No. 24) and Pls.' Mot. for Partial Summ. J. (Doc. No. 31) ("October 2013 Ruling") (Doc. No. 42).

On August 1, 2014, Dominion filed a second Motion for Partial Summary Judgment on three issues:  (1) Zurich's liability for defense costs incurred prior to April 1, 2011, which is the date on which Dominion formally requested that Zurich assume the defense of the Massachusetts Action; (2) Zurich's liability for interest on any award of costs for the Massachusetts Action incurred both prior to and after April 1, 2011; and (3) Zurich's liability for the costs of litigating this action.  See Pls.' Mot. for Partial Summ. J. on Zurich's Liability for: (i) "Pre-tender" Costs; (ii) Prejudgment Interest; and (iii) Fees Incurred to Establish the Existence and Extent of Zurich's Duty to Defend ("Pls.' 2014 Mot. for Summ. J.") (Doc. No. 56).  After full briefing and an oral argument, the court granted in part and denied in part Dominion's second Motion for Partial Summary Judgment.  See Ruling Re: Pls.' Mot. for Partial Summ. J. on Zurich's Liability for: (I)

"Pre-tender" Costs; (II) Prejudgment Interest; and (III) Fees Incurred to Establish the Existence and Extent of Zurich's Duty to Defend (Doc. No. 72) ("March 2015 Ruling") (Doc. No. 72).  In particular, the court granted Dominion's Motion for Partial Summary Judgment on the second and third issues, concluding that: (1) Dominion is entitled to prejudgment interest "for any chargeable costs paid by Dominion on or before April 1, 2011," with interest to start accruing on April 1, 2011, and (2) Dominion is entitled to seek an award of reasonable costs associated with this action.  See id. at 17, 21-22. However, the court denied without prejudice Dominion's Motion for Partial Summary Judgment on the first issue, namely whether Zurich is liable for defense costs paid by Dominion prior to its "tender" of the defense of the Massachusetts Action to Zurich on April 1, 2011.  See id. at 14.  That denial was motivated by the court's conclusion that Massachusetts law applies to this action, see id. at 6-10, and determination that a Massachusetts case "that appears closely analogous to the one at bar" was awaiting a final decision from the Massachusetts Supreme Judicial Court ("SJC"), id. at 11, 13. Because the SJC appeared poised to issue a Ruling that could wholly dispose of the issue of whether Zurich is liable to Dominion for pre-tender defense costs, the court denied summary judgment on this issue "without prejudice to the parties' moving for summary judgment anew on a reasonable briefing schedule after the final disposition of" the case pending before the SJC.  Id. at 14.

On October 9, 2015, the parties notified the court that the SJC had issued a final decision in the case of Boyle v. Zurich American Ins. Co., 36 N.E.3d 1229 (Mass. 2015). See Status Report (Doc. No. 74).  The parties proposed a briefing schedule wherein both parties would simultaneously file briefs on the issue of Zurich's liability for pre-

tender defense costs on December 4, 2015, see Proposed Briefing Schedule (Doc. No. 76), which the court granted, see Order (Doc. No. 77). Both parties filed their briefs as ordered. See Pls.' 2015 Mot. for Summ. J. (Doc. No. 78); Mem. of Zurich American Ins. Co. in Opp. to the Pls.' Renewed Mot. for Partial Summ. J. Regarding "Pre-tender" Costs ("Def.'s Opp.") (Doc. No. 79). Dominion subsequently sought, and was granted, leave to file a response to Zurich's contention, raised in its brief, that the issue of Zurich's liability for pre-tender defense costs is now moot. See Pls.' Mot. for Leave to Respond to Def.'s Suggestion of Mootness (Doc. No. 81); Order (Doc. No. 82).

For the reasons that follow, Dominion's renewed Motion for Partial Summary Judgment (Doc. No. 78) is **GRANTED**.

## II.    FACTS[1]

Dominion owns and runs power generation facilities, including the Salem Harbor Generating Station in Salem, Massachusetts ("the Salem Station"). JSF ¶¶ 3, 15 (Doc. No. 57). Alstom Power, Inc., ("Alstom") performs inspections of facilities, including the Salem Station. Id. ¶ 15. Risk Enterprise Management, Limited ("REM") is a third-party administrator of claims for Alstom. Id. ¶ 29. Zurich is an insurer. Id. ¶ 7.

On February 1, 2005, Dominion and Alstom entered into an agreement ("the Alliance Agreement") providing, inter alia, that Alstom would obtain and maintain general commercial liability insurance coverage as to certain inspections that it would perform for Dominion, and it would name Dominion as an additional insured under said

---

[1] The court derives the following from a set of facts and documents as to whose authority the parties have stipulated, see JSF (Doc. No. 57); Stipulated Record Appendix ("RA") (Doc. No. 34), while still "resolv[ing] all ambiguities and draw[ing] all inferences against the moving party," Garcia v. Hartford Police Dep't, 706 F.3d 120, 127 (2d Cir. 2013). The court recites only those facts necessary to resolve the narrow issue presented in the pending Motion.

insurance.  Id. ¶¶ 3–5, 14.  The Alliance Agreement further provides that Alstom would "at Dominion's sole option, defend Dominion . . . against" lawsuits.  Id. ¶ 6; RA at 145 (Doc. No. 34).

Alstom's corporate parent purchased from Zurich a commercial liability insurance policy with a coverage period of April 1, 2007 to April 1, 2008 ("the Zurich Policy").  JSF ¶¶ 7, 11 (Doc. No. 57).  Although the Zurich Policy does not explicitly name Dominion as an insured, a term in the Policy provides indirectly for Dominion's coverage because it states that entities in addition to Alstom are automatically insured if Alstom has agreed to name them as an insured with respect to services Alstom has performed for them.  Id. ¶¶ 12–14.  The Zurich Policy also provides, inter alia, that the insured "must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim," and, similarly, that "you must . . . [n]otify us as soon as practicable" "[i]f a claim is made or a 'suit' is brought against any Insured."  Id. ¶ 28 (quoting section IV.2 of the Zurich Policy).  The Zurich Policy further provides that the insured "must . . . [c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit.'"  Id.

In early April 2007, during an inspection pursuant to the Alliance Agreement, Service Engineer Dennis Nygaard of Alstom inspected Boiler Number 3 at the Salem Station.  Id. ¶ 21.  On November 6 of the same year, a steam explosion of Boiler Number 3 caused the deaths of three individuals ("the decedents") and allegedly injured two more.  Id. ¶ 22.

On December 10, 2007, REM sent, and Zurich received, a notice that a steam explosion had occurred at a Dominion power generation facility, that Dominion was a

client of Alstom, that this event "potentially could involve" the Zurich Policy, and that "we are providing provisional notice of this matter to Zurich . . . [and] respectfully request[ing] all available insurance coverage issued by Zurich to Alstom . . . including but not limited to defense and indemnity." Id. ¶¶ 29–30; REM Notice at 1 (Doc. No. 57-1). On May 5, 2009, the decedents' estates and others instituted the Massachusetts Action against Dominion, Alstom, Nygaard, and others. JSF ¶ 25 (Doc. No. 57). The summons in the suit was dated July 1, 2009. Id. ¶ 31. Zurich received notice of the action on July 9, 2009. Id.

On April 1, 2011, while discovery was ongoing in the Massachusetts Action, Dominion requested that Zurich provide it with a defense in the Massachusetts Action. Id. ¶ 32-33. On December 1, 2011, Zurich responded to Dominion "that it could have no defense-related obligation to Dominion under the Zurich Policy before a determination of the relative fault, if any, of Dominion and Alstom in the Massachusetts Action." Id. ¶ 34. Zurich did not subsequently agree to furnish Dominion with a defense or to reimburse Dominion for any of its costs of defense in the Massachusetts Action. Id. ¶ 35. Dominion initiated this lawsuit against Zurich in 2013. See Compl. (Doc. No. 1).

## III.   STANDARD OF REVIEW

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial,"

6

<u>Anderson</u>, 477 U.S. at 256, and present such evidence as would allow a jury to find in his favor, <u>see</u> <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record to address whether there are material issues of fact, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  <u>See</u> <u>Anderson</u>, 477 U.S. at 255; <u>Graham</u>, 230 F.3d at 38.  Summary judgment "is properly granted only when no rational finder of fact could find in favor of the non-moving party."  <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d 129, 134 (2d Cir. 2000).  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised, on the basis of the evidence presented, the question must be left to the finder of fact.  <u>Sologub v. City of New York</u>, 202 F.3d 175, 178 (2d Cir. 2000).

## IV.   DISCUSSION

As a preliminary matter, the court considers Zurich's argument that the issue of liability for pre-tender defense costs has become moot in light of the fact that the Zurich Policy has been exhausted.  <u>See</u> Def.'s Opp. at 2 (Doc. No. 79).  Because the court concludes that this issue is not moot, the court proceeds to analyze the merits of Dominion's renewed Motion for Partial Summary Judgment on the issue of Zurich's liability for pre-tender defense costs.

### A.    <u>Mootness</u>

The mootness doctrine derives from Article III of the United States Constitution, which states that federal courts, which are courts of limited jurisdiction, may hear only "cases" or "controversies."  U.S. Const. art. III, § 2, cl. 1; <u>see</u> <u>Russman v. Board of Educ. of Enlarged City School Dist. of City of Watervliet</u>, 260 F.3d 114, 118 (2d Cir.

7

2001).  "Although the 'case or controversy' requirement has itself been a fertile ground for controversy through the years, at its uncontroverted core lies the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural."  Russman, 260 F.3d at 118.  However, "[a] case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."  Knox v. Service Employees Intern. Union, Local 1000, 132 S. Ct. 2277, 2287 (2012) (internal quotations and citations omitted).  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  Id. (internal alterations, quotations, and citation omitted).

Zurich argues that the issue of liability for pre-tender costs is moot because "Zurich has no further contractual obligation to pay additional defense costs, whether those costs are denominated pre-tender or post-tender defense costs."  Def.'s Opp. at 3 (Doc. No. 79).  According to Zurich, "Dominion has received everything that it is contractually entitled to receive under the policy," and, as a result, it is now "impossible for the Court to grant Dominion relief on its claim for pre-tender costs."  Id.  Dominion does not appear to dispute that the Zurich Policy has been exhausted, but contends that the issue of pre-tender defense costs is not moot because resolution of this issue bears directly on the amount of prejudgment interest Dominion is entitled to recover.  See Pls.' Mem. in Response to Def.'s Suggestion of Mootness ("Pls.' Mootness Mem.") at 1-2 (Doc. No. 83).  The court agrees with Dominion.

The court has previously determined that, under Massachusetts law, "for any chargeable costs paid by Dominion on or before April 1, 2011, Zurich will be liable for interest running from April 1, 2011."  March 2015 Ruling at 17 (Doc. No. 72).

Furthermore, "for all of Dominion's applicable costs paid after April 1, 2011, interest is to be calculated . . . from the date those fees were paid." Id. at 18. In a joint statement, the parties stipulated that, as a matter of Massachusetts law, any award of prejudgment interest "would be supplemental to, and neither be subject to nor contribute to exhaustion of, the Zurich Policy's limits of liability." Joint Statement Regarding Effect of Exhaustion of Policy Limits on Dominion's Claim for Interest and Attorneys' Fees at 1 (Doc. No. 65). These facts led the court to conclude, in one of its prior Rulings, that "there does not appear to be any question that any of the disputes in the present motion are moot." March 2015 Ruling at 14 n.4 (Doc. No. 72).

Although the court has carefully considered the arguments raised in Zurich's brief, the court ultimately reaches the same conclusion that it did in the March 2015 Ruling, namely that the issue of Zurich's liability for pre-tender defense costs is not moot. As Dominion correctly notes, if they are theoretically entitled to recover pre-tender defense costs, "[t]he 'block' of costs to which interest is applied . . . shifts back in time," which means that "the period over which interest would be calculated for a portion of the costs thus would be longer[,] and the total amount of interest due would be greater." Pls.' Mootness Mem. at 2 (Doc. No. 83). Because the court's decision as to whether Dominion is entitled to pre-tender defense costs potentially affects the amount of prejudgment interest to which Dominion is entitled, Dominion retains a real and concrete interest in the resolution of the issue presented in their renewed Motion for Partial Summary Judgment (Doc. No. 78). Thus, the question of Zurich's liability for pre-tender defense costs is not moot. See Knox, 132 S. Ct. at 2287.

B.      Zurich's Liability for Pre-Tender Defense Costs

Although the court withheld judgment on the issue of Zurich's liability for pre-tender defense costs with the understanding that the SJC's decision in Boyle v. Zurich American Ins. Co., 36 N.E.3d 1229 (Mass. 2015), might provide the answer to this question, the parties' briefing on the pending Motion indicates that they disagree about whether the SJC's decision in Boyle actually resolves the question of Zurich's liability in this case.  See Pls.' Mem. in Supp. of their Renewed Mot. for Partial Summ. J. on Zurich's Liability for "Pre-tender" Costs in Light of Boyle v. Zurich American Ins. Co. ("Pls.' Mem.") (Doc. No. 78-1); Def.'s Opp. (Doc. No. 79).  Although the court agrees with Zurich that Boyle does not squarely hold that a defendant is always liable for pre-tender defense costs, the court concludes that, under Massachusetts law, Zurich is liable for pre-tender defense costs in this case.

The case of Boyle v. Zurich American Ins. Co. involved an accident in which an employee of an automobile repair shop was severely injured by an exploding tire.  See Boyle, 36 N.E.3d at 1232.  The employee (Boyle) and his wife sued the company that operated the automobile repair shop (C&N Corporation) for bodily injury and loss of consortium.  See id.  C&N held an insurance policy issued by Zurich American Insurance Company.  See id.  Although C&N notified Zurich of Boyle's injury, it did not immediately notify Zurich of Boyle's lawsuit.  See id.  However, the Boyles' attorney did send a letter to Zurich that informed the company "of the Boyles' intention to pursue a bodily injury claim and ask[ed] for information about the coverage limits of C&N's policy."  Id. at 1233.  Zurich did not respond to this letter and did not defend against the Boyles' subsequent suit.  See id. at 1232-33.  Ultimately, C&N failed to answer the

Boyles' Complaint and a default judgment was entered in favor of the Boyles. See id. at 1234. The Boyles' attorney provided Zurich with notice of a scheduled hearing to ascertain the amount of the Boyles' damages, but Zurich did not "move to have C&N's default set aside; did not contact C&N to discuss the suit; and did not attempt to settle the suit with the Boyles, or otherwise to contact them or their attorney." Id. at 1234.

Following the entry of default judgment against C&N, the Boyles brought a suit against Zurich, which included "a claim that Zurich had committed a breach of its contractual duty to defend C&N."[2] Id. at 1234. The trial court ruled against Zurich, concluding that Zurich had breached its duty to defend C&N. See id. at 1235. On appeal, Zurich argued that this was error, because C&N's failure to provide notice of the Boyles' lawsuit to Zurich as required by the terms of the insurance policy meant that Zurich's duty to defend C&N had never been triggered. See id. The SJC disagreed. In Boyle, the SJC noted that "[t]he approach advocated by Zurich long has been rejected in Massachusetts, both by way of legislation and in our jurisprudence." Id. at 1236. The Boyle court observed that prior cases had made clear that "[n]otice requirements are intended to permit the insurer to undertake a 'seasonable investigation of the facts relating to liability,' . . . so that it may preserve 'an opportunity to defend effectively." Id. at 1237 (quoting Johnson Controls, Inc. v. Bowes, 409 N.E.2d 185 (1980)). "These purposes are undermined by an insured's breach only if the insurer is prejudiced thereby." Id. According to the Boyle court, this reasoning stands in contrast to "[t]he contrary approach, which treats a notice provision as a condition precedent to the

---

[2] Following the entry of default judgment against C&N in the Boyles' first lawsuit, C&N assigned all of its rights and claims against Zurich to the Boyles. See Boyle, 36 N.E.3d at 1234.

insurer's obligations." Id. at 1237.  On the basis of this statement of Massachusetts law, the Boyle court concluded that:

> . . . C&N's failure to notify Zurich of the complaint brought by the Boyles did not, standing alone, excuse Zurich of its duty to defend C&N.  Instead, upon learning from the Boyles' attorney that a lawsuit was pending against C&N for an occurrence covered by the policy, Zurich was required to defend against that suit unless C&N's breach of its notice obligation prejudiced Zurich, by depriving it of an opportunity to mount an effective defense.

Id. at 1238.

In the present case, Zurich argues that Boyle establishes an insurer's duty to defend notwithstanding an insured party's breach of a policy term requiring the insured to provide the insurer with notice of a lawsuit.  Zurich contends this does not answer the question presented in this case, namely whether Dominion is entitled to recover defense costs incurred prior to the moment at which it formally asked Zurich to assume the defense of the Massachusetts Action.  See Def.'s Opp. at 4 (Doc. No. 79).  Zurich styles this latter issue as "an issue of first impression under Massachusetts law." Id. at 3.  In support of their argument that liability for pre-tender defense costs is an issue distinct from the issue presented in Boyle, Zurich cites a string of federal district court cases from the mid-1990s through the mid-2000s, see id. at 4, and contends, without supportive citation, that "Massachusetts lower courts follow the same rule as the majority of other states:  an insurer is not liable for pre-tender defense costs," id. at 6.

Zurich may be correct that Boyle does not mandate an insurer's liability for pre-tender defense costs in all cases.  However, the court need not definitively resolve the question of Boyle's scope because the court concludes that, even if Boyle is given the

narrow reading Zurich advocates, Zurich is still liable for pre-tender defense costs in this case.  Several considerations support this conclusion.

First, the facts of this case are distinguishable from many of the cases Zurich cites in support of the contention that pre-tender defense costs are not recoverable.  In this case, Zurich received notice of the accident that gave rise to the Massachusetts action approximately one month after the accident occurred.  See JSF ¶ 29 (Doc. No. 57).  That notice included information about Dominion, naming Dominion as "a client of Alstom," which is the company that held the Zurich Policy.  Id.  Zurich also received notice of the Massachusetts Action shortly after that lawsuit was filed.  See id. ¶¶ 25, 31 (noting the Massachusetts Action was filed May 5, 2009 and that Zurich received notice of the lawsuit on July 9, 2009).  Dominion was a named defendant in the Massachusetts Action.  See id. ¶ 25.  In sum, Zurich was promptly notified of both the accident that gave rise to the Massachusetts Action and the filing of the lawsuit itself, as well as Dominion's involvement in these matters.

In contrast to the facts of this case, many of the cases Zurich cites for the proposition that pre-tender defense costs are not recoverable involve situations in which an insured sought to recover defense costs incurred before the insurer was even aware a lawsuit had been filed.  For example, in Hoppy's Oil Serv., Inc. v. Ins. Co. of N. America, 783 F. Supp. 1505 (D. Mass. 1992), an insured was sued in 1985, but did not provide notice of the pending suit to its insurer until 1990.  See id. at 1507.  The court concluded that the insurer did not have a duty to provide defense costs prior to the date at which the insurer received notice of the lawsuit, because "[n]o duty to defend or to participate in a defense can arise before the insurer has notice of the suit against the

insured, or at least of the underlying claim and the likelihood of suit." [3] Id. at 1509.

Similarly, in Managed Health Care Systems, Inc. v. St. Paul Fire & Marine Ins. Co., No.

Civ.A.98CV10831, 2001 WL 34114949 at *2 (D. Mass. Sept. 28, 2001), the district court

declined to allow an insured to recover defense costs expended prior to the point at

which it gave the insurer notice of the lawsuit.  The court reasoned that "[b]y giving [the

insurer] no notice during the first year of the suit, the plaintiff left [the insurer] with no

power to affect the course and cost of the litigation during that time. . . . [The insurer]

should not have to pay for the portion of the Foster suit it had no opportunity to

influence."  Id. at *2.

　　In contrast to the insurers in Hoppy's Oil and Managed Health Care Systems,

Zurich had actual notice of the Massachusetts Action shortly after it was filed.  Thus, the

key cases on which Zurich relies for its argument that it should not be liable for pre-

tender defense costs are distinguishable.  Furthermore, the concerns about possible

prejudice and an insurer's need to be able to protect its interests that appear to underlie

decisions like Hoppy's Oil and Managed Health Care Systems are absent from a case,

such as this one, in which the insurer has actual notice that a lawsuit has been filed

against a party it insures.  Under this set of circumstances, the court concludes that the

---

[3] The court notes that this reasoning in Hoppy's Oil has been expressly rejected by at least one federal district court.  See Liberty Mut. Ins. Co. v. Black & Decker Corp., 383 F. Supp. 2d 200, 207 (D. Mass. 2004) ("I hesitate to disagree with Judge Keeton, particularly on questions of insurance law, but reflection persuades me that Hoppy's Oil does not represent the best rule—or, more pertinently, the law of Massachusetts . . . .").  Although the reasoning of Black & Decker Corp. is supportive of the court's decision in this case, the court concludes that it is unnecessary to resolve the disagreement between Black & Decker Corp. and Hoppy's Oil to rule on the pending Motion.  As noted in the text above, both Black & Decker Corp. and Hoppy's Oil deal with the recovery of pre-notice defense costs, i.e., situations in which the court must determine whether an insurer is liable for defense costs paid out before the insurer is even aware that a lawsuit has been filed.  In contrast, this case involves an insurer's liability for pre-tender defense costs, i.e., costs that were paid after the insurer was made aware of the lawsuit but before the insured formally asked the insurer to assume the defense.  The latter issue is easier to resolve than the former, especially where, as here, there is no evidence that the insurer was prejudiced or lacked the ability to protect its interests because the insured delayed in formally tendering the defense.

SJC would adhere to the general precept of Massachusetts law that an insurer is required to defend an insured unless a contractual breach on the part of the insured prejudiced the insurer by "depriving it of an opportunity to mount an effective defense." Boyle, 36 N.E.3d at 1238.

Second, Zurich has offered no evidence or argument in support of the idea that Dominion's failure officially to tender the defense to Zurich prior to April 2011 meant that Zurich was prejudiced or otherwise not able to protect its interests.  There is no mention of alleged prejudice in the Joint Statement of Facts submitted by the parties, which the parties stipulate is "to serve, together with the parties' June 14, 2013, Stipulated Record Appendix (Doc. No. 34), as the exclusive sources of facts to be considered by the Court in deciding" whether Zurich is liable for pre-tender defense costs.  JSF at 1 (Doc. No. 57).  Nor does Zurich argue in its briefing on the pending Motion that it was prejudiced or otherwise unable to protect its interests because of Dominion's failure immediately to tender the defense of the Massachusetts Action.  See Def.'s Opp. (Doc. No. 79).  In other words, there are no genuine issues of material fact on the question of prejudice, and the undisputed facts do not support the conclusion that Zurich was prejudiced or unable to protect its interests because of any delay in Dominion's formal tender of the defense to Zurich.  Thus, the court concludes that, under Massachusetts law, Zurich is liable for pre-tender defense costs.  See Wyman-Gordon Co. v. Liberty Mut. Fire Ins. Co., No.Civ.A.96-2208A, 2000 WL 34024139 at *6-7 (Mass. Super. Ct. July 14, 2000).

Finally, the court notes that any concern that this Ruling could motivate insured parties to assume, and spend lavishly on, their own defenses with the expectation that the insurer will ultimately pick up the tab is mitigated by the fact that Dominion will only

be able to recover <u>reasonable</u> pre-tender defense costs.  <u>See</u> Pls.' Mootness Mem. at 3 n.1 (Doc. No. 83) (noting that Zurich has "preserved any right it may have to challenge the reasonableness of Dominion's defense costs"); <u>Black & Decker Corp.</u>, 383 F. Supp. 2d at 209 ("The parties agree that only 'reasonable' legal fees and expenses are recoverable.").

For all of these reasons, the court concludes that the application of Massachusetts law to the specific facts of this case results in the determination that Zurich is liable to Dominion for pre-tender defense costs.  Because the parties have represented that the limits of the Zurich Policy have been reached, this decision may not result in Dominion obtaining additional money from Zurich for those costs, but it may change the calculation of prejudgment interest due to Dominion pursuant to a previous Ruling of this court.

## V.   CONCLUSION

For the foregoing reasons, Dominion's renewed Motion for Partial Summary Judgment (Doc. No. 78) is **GRANTED**.  The parties' representations have led the court to believe that the resolution of this issue means that this case has concluded. However, the court will hold a brief telephonic status conference to confirm that there are no remaining issues and that the case should be closed.  A separate calendar scheduling the telephonic status conference will issue.

**SO ORDERED.**

Signed at New Haven, Connecticut, this 15th day of March, 2016.

 _/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge

16